IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, | § § § § § § § § § § § § § § | |
| PLAINTIFF, | | |
| VS. | | Civil Action: |
| SOUTHWESTERN BELL TELEPHONE COMPANY and AT&T SERVICES, INC. | | |
| DEFENDANTS. | | |

## COMPLAINT

Comes now the Communications Workers of America, AFL-CIO, hereinafter Plaintiff, by and through counsel, and complains of Southwestern Bell Telephone Company and AT&T Services, Inc., hereinafter Defendants, as follows:

### I.     Introduction

1.     This is an action brought by a labor union under Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. §185, against Defendants to compel arbitration of a grievance filed by the Union claiming violations of an existent collective bargaining agreement containing grievance and arbitration articles entitling the Union to pursue its grievance through the grievance procedure and arbitration.

### II.     Parties

2.     Plaintiff Communications Workers of America, AFL-CIO ("CWA" or "Union") is a labor organization within the meaning of 29 U.S.C. § 152(5) of the National Labor Relations Act.  Plaintiff is currently the representative for the purpose of collective bargaining of

1

employees of Defendants Southwestern Bell Telephone Company and AT&T Services, Inc.; CWA is and has been a party to a collective bargaining agreement ("CBA") with those employers, who are collectively known as the "Company" in the current labor agreement entered into in 2017 and subsequently extended to 2025.

3. Defendant Southwestern Bell Telephone Company is an employer within the meaning of 29 U.S.C. § 152(2) and employs persons in an industry affecting commerce within the meaning of 29 U.S.C. § 185. Said Defendant is a signatory to the 2017 CBA, wherein it is identified in the recognition article as one of the entities that are parties to the recognition of the Union as exclusive representative, and are collectively referred to in the recognition clause as the "Company". Defendant Southwestern Bell Telephone Company does business in this judicial district and can be served with process through its registered agent for service of process, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

4. Defendant AT&T Services, Inc. is an employer within the meaning of 29 U.S.C. § 152(2) and employs persons in an industry affecting commerce within the meaning of 29 U.S.C. § 185. Said Defendant is a signatory to the 2017 CBA, wherein it is identified in the recognition article as one of the entities that are parties to the recognition of the Union as exclusive representative, and are collectively referred to in the recognition clause as "the Company". Defendant AT&T Services, Inc. does business in this judicial district and can be served with process through its registered agent for service of process, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

5. Another entity, DirecTV, LLC, an entity that was wholly owned by AT&T, Inc., the parent company of the Defendants in this lawsuit, is named in the recognition article as part of the "Company" and was a signatory to the 2017 CBA, but is no longer part of the "Company" as

defined in the recognition article, as set forth in more detail below. The new entity currently referred to as "DirecTV" is now owned by Defendants' corporate parents and other entities and is not accountable to the Union for the grievance that is the subject of this action and is not being sued herein.

### III.   Jurisdiction

6. The district court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §§ 185(a) and 185(c).

### IV.   Venue

7.. Venue is proper in this judicial district in that Defendants do business in and reside in this district within the meaning of 28 U.S.C. §1391(b)(1) and in that a substantial part of the events or omissions giving rise to the claims occurred and are occurring in this district within the meaning of 28 U.S.C. §1391(b)(2).

### V.   Material Facts

8. Plaintiff and Defendants are parties to a collective bargaining relationship that dates back decades. The most recent CBA between the parties was entered into on April 9, 2017, extended on June 30, 2020, and expires on April 12, 2025; that CBA covers employees in the states of Arkansas, Kansas, Missouri, Oklahoma, and Texas.

9. The CBA is segregated into the "Departmental Agreement" and the "Agreement of General Application".  Article XIX, Grievances, of the Departmental Agreement provides the method by which claimed violations of the Departmental Agreement as well as disciplinary actions can be addressed with the Company. Normally, the grievance procedure entails two steps prior to arbitration, but grievances that concern multiple employees across multiple management organizations may be processed in one step.

3

10. The arbitration article is set forth in Article IV, Arbitration, of the Agreement of General Application. The Departmental Agreement and Agreement of General Application each have their own enumerations. The said Article IV of the Agreement of General Application provides that the Company is authorized to dismiss employees with more than one year of service only for just cause. Decades worth of arbitration awards and bargaining history confirm this interpretation.

11. Article XVII, Force Adjustment, of the Departmental Agreement, provides the process by which employees can preserve their employment or leave payroll when the Company initiates a layoff.

12. Article XVIII, Severance Payments, of the Departmental Agreement sets forth the severance pay to which bargaining unit employees are entitled should they leave payroll involuntarily or voluntarily during a layoff.

13. The 2017 CBA as extended contains Appendix J of the Departmental Agreement, which sets forth the terms and conditions of employment of bargaining unit employees who hold the Premises Technician and Warehouse Assistant job titles.

14. Appendix J, Supplemental Statement 12 of the Departmental Agreement states the way Appendix J employees are to be laid-off and paid severances.

15. Article IV, Arbitration of the Agreement of General Application, in relevant part, states that issues between the parties that concern the following subjects may be taken to final and binding arbitration once the steps of the formal grievance procedure under Article XIX of the Departmental Agreement have been completed: "the dismissal for just cause of any employee with more than one (1) completed year's Net Credited Service," "the true intent and meaning of any specific provision or provisions" of the Departmental Agreement and "the application of any

4

provision or provisions" of the Departmental Agreement " to any employees or group of employees".

16. Arbitration is final and binding under Article IV of the Agreement of General Application.

17. In approximately 2016, Defendants' corporate parent, AT&T, Inc., acquired DirecTV and DirecTV was added to the entities within the definition of the "Company" jointly recognizing the Union as exclusive representative of the employees in the states covered by the agreement.

18. In approximately February 2021, it was announced that DirecTV was being spun-off into a standalone corporate entity that AT&T would no longer exclusively own. This transaction affected several different bargaining units across the United States that are represented by CWA in dealings with various entities affiliated with AT&T, including Southwestern Bell Telephone Company. The new DirecTV would employ hundreds of employees whom it would receive from the aforementioned bargaining units in the intercorporate transactions. Each employee received by the new DirecTV would continue to be covered by the applicable collective bargaining agreement that covered the employee in the employee's applicable pre-transaction bargaining unit, i.e. the new DirecTV would assume all of the said collective bargaining agreements. The Agreement of Contribution and Subscription dated February 25, 2021 and entered into between Defendant AT&T Services, Inc. and the business entities giving rise to the new DirecTV provides that the new DirecTV is only responsible for obligations that were incurred after its assumption of the labor agreements; making any pre-assumption violations of an assumed CBA the responsibility of Defendant AT&T Services, Inc. This lawsuit concerns only the transactions affecting employees who were employed by

5

Defendants Southwestern Bell Telephone Company and AT&T Services, Inc. prior to the new DirecTV's assumption of the 2017 Southwestern Bell/AT&T Services labor agreement with Plaintiff CWA.

19.     The only dealing relating to this transaction to which the Union was a party was memorialized in a document entitled "Memorandum of Agreement re: Assumption of Labor Contracts" that was signed by representatives of the Union on August 3, 2021. Through this agreement, DirecTV adopted the applicable labor agreements covering employees it was receiving from AT&T-affiliated entities, including employees covered by the labor agreement at issue in this case. This document also states that the new DirecTV standalone entity will be responsible for any violation of the labor agreement that occurs after the spin-off from AT&T.

20.     In August 2021, the Union became aware that employees had been separated from their employment with Defendants unjustly, through means other than those stated in the Force Adjustment article and Appendix J, and that severances had not been paid in accordance with the CBA.

21.     The Union filed the following grievance on September 3, 2021:

This class action grievance charges the Company with the following violations of the 2017 labor agreement between AT&T Southwest and Communications Workers of America, AFL-CIO: (1) the termination without just cause and/or constructive discharge without just cause of bargaining unit employees who were terminated on or about Monday, August 2, 2021, by operation of the employees being involuntarily transferred to DirecTV; and (2) the violations of the following provisions of the 2017 Departmental Agreement as extended: (a) Article 17, Force Adjustment, by removing bargaining unit employees from payroll in a manner inconsistent with the terms of the labor agreement, (b) Article 18, Severance Payments, by failing to pay these employees severance pay in accordance with the terms of the labor agreement, (c) Appendix J, Supplemental Statement 12, Section 2 by removing employees from payroll by a process other than that agreed to by the parties, and (d) Appendix J, Supplemental Statement 12, Section 3 by failing to pay impacted employees their layoff allowance.

22. This grievance is only subject to one step of the grievance process because it involves multiple employees across multiple business units of the Defendants.

23. By its very terms, the grievance sought redress for the acts of Defendants in terminating the employment of bargaining unit employees with Defendants and spinning them off to the new DirecTV; the grievance did not address any act by the new DirecTV as the new employer of the bargaining unit employees; it addressed the contractual violations by the old employers in spinning the employees off from the AT&T affiliates. The decisions by the Defendants herein in their selection and treatment of the employees to be spun off to the new DirecTV and/or unjustly dismissed from employment as a result of the transactions concerning the spin-off of DirecTV were made before the closing date of the transactions between the AT&T entities and the new DirecTV.

24. Defendants responded to the grievance on October 18, 2021 and stated:

Contrary to the position taken by CWA, the Company asserts that CWA specifically agreed that it would be released from the collective bargaining agreement covering the affected employees in exchange for the Company's securing the agreement of DIRECTV Entertainment Holdings, LLC to assume the collective bargaining agreement. To this end, CWA specifically agreed that DIRECTV would be the new employer. As a result, the Company asserts that it is no longer the employer of the affected employees or a party to their collective bargaining agreement. The Company further asserts that no employees were terminated in this transaction. The Company also asserts that it no longer has a grievance and arbitration agreement with CWA that covers these allegedly aggrieved members and has no obligation to entertain this grievance.

25. By their letter of October 18, 2021, Defendants nevertheless stated they were willing to meet with the Union over the September 3, 2021 grievance.

26. The parties met over the grievance on April 27, 2022. During this meeting, the Company for the first time stated that it would hear the grievance only informally and as such the grievance could not be taken to arbitration. This position was confirmed in a telephone call

7

between representatives of Plaintiff and Defendants on April 29, 2022.

27.     The Company's unilateral decision to hear the grievance only informally has resulted in the case having proceeded as far as it can in the grievance and arbitration processes absent judicial intervention. The Union has exhausted its good faith efforts to pursue the grievance through the Formal Grievance Procedure, but its proper use of the grievance procedure has been wrongfully blocked by the Defendants. The grievance is thus ripe for arbitration.

### VI.    Claim for Relief

Count 1—Compelling Arbitration of the September 3, 2021 Grievance

28.     Plaintiff herein incorporates by reference Paragraphs 1-26 of the Complaint.

29.     Pursuant to 29 U.S.C. § 185, Plaintiff sues to compel arbitration of the September 3, 2021 grievance. Questions of just cause for termination of employees with more than one year of service and violations of Article XVII, XVII, and Appendix J of the Departmental Agreement are legitimate subjects for arbitration under Article IV, Arbitration, of the Agreement of General Application. The grievance concerns conduct in violation of the CBA that arose when these employees were employed by the Company when the Company was composed entirely of wholly owned AT&T subsidiaries and concerns the pre-closing decisions about the selection and treatment of employees by the Company as it was prior to the closing of the transaction that gave rise to the new, separate DirecTV.

### VII.   Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff CWA prays that Defendants Southwestern Bell Telephone Company and AT&T Services, Inc. duly appear and answer this complaint, and that upon trial of this cause the Court award judgment to Plaintiff granting relief as specified above by compelling arbitration of the September 3, 2021 grievance, together with

costs as provided by law and any other relief that Plaintiff is entitled to in law or at equity.

        Respectfully Submitted,

        DAVID VAN OS & ASSOCIATES, P.C.

        By:    /s/ David Van Os
                 David Van Os
                 Texas Bar No. 20450700
                 dvo@vanoslaw.com
                 Matt Holder
                 Texas State Bar No. 24026937
                 matt@vanoslaw.com
                 8620 North New Braunfels Ave., Ste. 101
                 San Antonio, Texas 78217
                 Telephone:    210/824-2653
                 Facsimile:    210/824-3333

                 *Counsel for Plaintiff*