IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWESTERN BELL TELEPHONE COMPANY & AT&T SERVICES, INC.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ NO. 1:22-cv-00455-LY |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants Southwestern Bell Telephone Company ("Southwestern Bell") and AT&T Services, Inc. ("AT&T") move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint filed by Plaintiff Communications Workers of America ("Union").

The Court should dismiss this action to compel arbitration of a grievance under 29 U.S.C. § 185 because the face of the grievance, agreements relied on in the Complaint, and relevant public records of which the Court may take judicial notice all show the grievance is not arbitrable against Defendants as a matter of law. The Union's grievance plainly alleges violations occurring after the closing of AT&T's spin-off of DIRECTV, LLC ("DIRECTV"). That fact requires dismissal of this suit because the Union expressly agreed that it must pursue all such grievances, if at all, with third-party DIRECTV Entertainment Holdings, LLC, or its subsidiaries—not with AT&T or Southwestern Bell. The Complaint presents no plausible claim for relief against either AT&T or Southwestern Bell.

1

## I. RELEVANT BACKGROUND FACTS AND ALLEGATIONS

### A. The 2017 Labor Agreement

Southwestern Bell, AT&T, and the Union are parties to a 2017 collective bargaining agreement ("Labor Agreement") that contains a grievance and arbitration procedure for resolution of certain types of alleged labor violations. (*Complaint*, ¶¶ 2, 8, 15). Before the spin-off of DIRECTV, the parties to the Labor Agreement included Southwestern Bell, AT&T, and DIRECTV on one hand, and the Union on the other. (*Id.*, ¶ 17). The Labor Agreement covered various job titles of those employers within a five-state region that includes Texas. (*Id.*, ¶ 8).

### B. On July 31, 2021, DIRECTV LLC Was Spun Off

AT&T announced in early 2021 that it had agreed to sell a substantial portion of DIRECTV and spin-off the DIRECTV business. (*Complaint*, ¶ 18). This transaction was memorialized in an Agreement of Contribution and Subscription, signed February 25, 2021, which would result in DIRECTV having a new corporate owner upon closing. (*Id.*; *see* Exhibit A, *MOA re Assumption of Labor Contracts*, ¶ A, cited in Complaint ¶ 19).

Upon closing of the transaction, the 2017 Labor Agreement would no longer apply to DIRECTV employees. (*Complaint*, ¶ 18). At closing, those employees would be represented by the Union pursuant to a separate collective bargaining relationship with DIRECTV or its new corporate parent. (*Id.*, ¶¶ 18-19). The Union acknowledges that the Labor Agreement to which AT&T and Southwestern Bell are parties would continue to apply only to alleged actions taken with respect to those employees covered by the Labor Agreement ***before*** the closing. (*Id.*, ¶¶ 18, 29).

### C. The MOA

In advance of the closing, the Union met with AT&T and DIRECTV to negotiate their respective labor agreement obligations before, upon, and following closing. (*See* Complaint, ¶ 19;

Exhibit A, *MOA re Assumption of Labor Contracts*). Those discussions resulted in a signed Memorandum of Agreement re Assumption of Labor Contracts ("MOA"), the terms of which the Union references in paragraph 19 of its Complaint.

In the MOA, the new DIRECTV organization, led by DIRECTV Entertainment Holdings, LLC, agreed to adopt the terms of the 2017 Labor Agreement for the employees who transferred from AT&T-affiliated entities as part of the transaction. (*Complaint*, ¶ 19; *see* Exhibit A, *MOA re Assumption of Labor Contracts*, ¶¶ A-B, 2). More specifically, the MOA expressly states that "**effective upon closing, DIRECTV agrees to assume and abide by** all the terms of [AT&T's] collective bargaining agreements" for employees covered by such agreements prior to the spin-off. (Exhibit A, *MOA re Assumption of Labor Contracts*, ¶ 2) (emphasis added). The Union appears to acknowledge in its Complaint what the MOA reinforces: AT&T would have no further responsibility for DIRECTV employees beginning at closing; rather, the newly separate DIRECTV organization would be solely "responsible for any violation of the labor agreement that occurs after the spin-off." (*Complaint*, ¶ 19).

D.     **The Closing and the Grievance**

The spin-off transaction closed on July 31, 2021, as publicly reported by AT&T, Inc. in its Form 8-K report to the Securities and Exchange Commission ("SEC") on October 21, 2021. (*See* Exhibit B, *Form 8-K Report dated 10-21-21*, at p. 1). The Union does not allege that anyone became unemployed at closing, or that anyone had to apply for employment with or be hired or re-hired by any DIRECTV entity. (*See generally Complaint*). Nor does the Union allege any diminution in any employees' pay or benefits, or any other change whatsoever to their terms or conditions of employment as a result of the spin-off. (*Id.*). Instead, the Union concedes that the DIRECTV organization received the employees with no lesser labor-agreement rights than they

held pre-spin-off under the Labor Agreement with AT&T and Southwestern Bell.[1] (*Complaint*, ¶ 19).

The Union nevertheless filed a grievance a little over one month after the spin-off, claiming violations of the 2017 Labor Agreement based on the received employees' alleged "termination without just cause," involuntary "discharge," or "layoff." (*Complaint*, ¶ 21). According to the grievance, these violations occurred "on or about Monday, August 2, 2021"—two days *after* the July 31, 2021 closing of the spin-off. (*Complaint*, ¶ 21; Exhibit B, *Form 8-K Report dated 10-21-21*, at p. 1).

Despite the clear language in the grievance, the Union purports throughout its Complaint that the grievance alleges pre-spin-off wrongs. (*See, e.g.*, *Complaint*, ¶ 29 [mischaracterizing the grievance as "concern[ing] conduct in violation of the Labor Agreement that arose when these employees were employed by the Company" pre-spin-off]). The text of the grievance reveals otherwise. (*See id*, ¶ 21). It specifically alleges that the supposed Labor Agreement violations occurred "by operation of the employees being involuntarily transferred to DirecTV:"

- "on or about August 2, 2021"—multiple days *after* the closing;
- by "removing [the] employees from payroll;"
- by "failing to pay [them] severance pay;" and
- by "failing to pay impacted employees their layoff allowance."

(*Id.*). The grievance references no date earlier than August 2, 2021, for any alleged violations. (*Id.*). And it references no alleged wrongs prior to the spin-off of DIRECTV being completed.

---

[1] In fact, upon close, the Union admits "[t]he new DirecTV would employ hundreds of employees whom it would receive from the aforementioned bargaining units in the intercorporate transactions. Each employee received by the new DirecTV would continue to be covered by the applicable collective bargaining agreement that covered the employee in the employee's applicable pre-transaction bargaining unit, *i.e.* the new DirecTV would assume all of the said collective bargaining agreements." (*Complaint*, ¶ 18).

(*Id.*).  To that end, the Union further makes clear in its Complaint that the alleged dismissals at issue in the grievance were "***as a result*** of the [spin-off] transactions."  (*Id.*, ¶ 23) (emphasis added).

## II.     RULE 12(B)(6) REVIEW FRAMEWORK

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim for relief that is plausible on its face.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Montoya v. FedEx Ground*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)).

"When reviewing a motion to dismiss, a district court must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).  Dismissal of the Union's Complaint is necessary here because those sources demonstrate the absence of a facially plausible claim for relief against AT&T or Southwestern Bell.

## III.    THE UNION HAS FAILED TO STATE A CLAIM FOR RELIEF

The Union's only cause of action improperly attempts to force AT&T and Southwestern Bell to arbitrate a grievance over matters the parties to this suit unmistakably agreed are the responsibility of DIRECTV.  Dismissal is required for that reason.

### A.     The Grievance Is Not Arbitrable with AT&T and Southwestern Bell Because It Facially Alleges Violations *After* Closing of the Spin-Off of DIRECTV

"[T]he question of arbitrability [under 29 U.S.C. § 185]—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an

issue for judicial determination." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). The Court's analysis consists of "ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960). Here, the relevant agreements plainly assign the subject of the grievance in question to the grievance and arbitration procedures of the collective bargaining agreement existing between the Union and DIRECTV, not the 2017 Labor Agreement between the Union and AT&T and Southwestern Bell.

First, AT&T and Southwestern Bell are not parties to the arbitration agreement that covers the wrongs alleged in the grievance.

Second, the allegations fall outside of the scope of the prior agreement. The timing of the alleged wrongdoing described in the grievance is dispositive. The Court can and should take judicial notice of the fact that the closing of the spin-off transaction took place on July 31, 2021, as disclosed in the Form 8-K Report filed with the SEC. *See Funk*, 631 F.3d at 783 (noting that judicial notice on a motion to dismiss is based on Federal Rule of Evidence 201 and is reviewed on an abuse of discretion standard). The July 31 closing date of the transaction is a matter of public record, and the publicly-available SEC filing relied upon by AT&T and Southwestern Bell to establish that date is precisely the type of public record the Court may properly take notice of. *Id.* (finding no error in district court taking judicial notice of administrative agency documents and transcripts in the course of granting a Rule 12(b)(6) motion to dismiss); *see Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2019) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."); *see also Edwards v. McDermott Int'l*, 2021 U.S. Dist. LEXIS 71754, at *7 n. 2 (S.D. Tex. Apr. 14, 2021) (taking judicial notice of Form 10-Q and additional SEC filings on a 12(b)(6) motion to dismiss). The grievance quoted by the Union in

paragraph 21 of the Complaint expressly states that the alleged violations occurred on an August 2021 date, multiple days *after* the closing, not prior to closing as the Union sometimes attempts to recharacterize the content of the grievance in its Complaint.

The terms of the MOA make clear that alleged violations occurring "upon closing" or after with respect to DIRECTV employees are not AT&T or Southwestern Bell's obligation, but the obligation of the new DIRECTV organization under its separate agreement with the Union and that agreement's attendant grievance and arbitration procedure. (Exhibit A, *MOA re Assumption of Labor Contracts*, ¶ 2). The Union drills home the point in its own words by clearly delineating "*pre*-assumption violations of an assumed CBA" as the responsibility of AT&T (*Complaint*, ¶ 18), and "any violation . . . that occurs after the spin-off from AT&T" as the sole responsibility of the newly separate DIRECTV (*Id.*, ¶ 19). That agreed-upon delineation means it is unmistakable that AT&T and Southwestern Bell have no duty to arbitrate the alleged August 2021 violations asserted in the grievance. Dismissal of the Complaint is therefore required.

> **B.      Even if the Grievance Were Interpreted as Alleging Violations Resulting from the Time of Closing Instead of Post-Closing, It *Still* Is Not Arbitrable with AT&T or Southwestern Bell**

Even if the alleged violation date of August 2, 2021 is ignored when reviewing the Union's grievance (as the Union may urge), the result is the same. The MOA is clear that *post*-closing issues are the responsibility of DIRECTV, as already discussed. But the MOA makes equally clear that any issues arising *upon* closing also fall in the same category.

The reason for that conclusion is the same, as well: the MOA memorializes the Union's specific agreement that "*upon closing*" all Labor Agreement obligations previously held by AT&T and Southwestern Bell with respect to the employees at issue are assumed by the newly separate DIRECTV organization. (Exh. A, *MOA re Assumption of Labor Contracts*, ¶ 2). The Union

7

cannot specifically agree in the MOA that alleged employee issues arising from the moment of closing forward are DIRECTV's responsibility and then contrarily contend in this lawsuit that the same such issues must be arbitrated under the Labor Agreement with AT&T and Southwestern Bell.

When reviewing a contract, "[t]he court's primary concern is to enforce the parties' intent as contractually expressed, and an unambiguous contract will be enforced as written." *Interstate Conf. Corp. v. City of Dallas*, 407 F.3d 708, 712 (5th Cir. 2005). The meaning of "upon closing" within the MOA cannot be debated. The inclusion of that term clearly and unambiguously assigns responsibility for any alleged violation arising upon closing as belonging solely to DIRECTV, not AT&T. *Id.* at 728 (overturning jury verdict based "on one of contract law's most basic principles – an unambiguous contract will be enforced as written" where, despite jury's award in one party's favor, "the parties contractually agreed [the other] would bear the risk" of the issues that arose). Even the most generous read of the Union's grievance leaves no doubt that it alleges violations occurring upon the spin-off transaction closing and the alleged consequences of that event. AT&T and Southwestern Bell have no duty to arbitrate that grievance under the clear terms of the MOA. The Union has failed to set forth a facially plausible claim under 29 U.S.C. § 185 for this further reason.

### C. Had the Grievance Alleged Dismissals Occurring Prior to the Closing of the Spin-Off, AT&T Would Not Have Objected to Arbitrability of the Substance of the Allegation

AT&T and Southwestern Bell certainly appreciate the general presumption in favor of arbitration. *See Commc'n Workers of Am. v. Sw. Bell Tel Co.*, 781 Fed. Appx. 339, 342-43 (5th Cir. 2019). If the grievance at issue **had** timely asserted violations based on alleged wrongdoings occurring ***prior*** to the closing, AT&T would not have raised the substantive arbitrability objections

that led to this suit.[2] Those objections must be sustained for the reasons discussed and preclude the Union from crafting a plausible claim against AT&T and Southwestern Bell before this Court. But that does not mean the Union has been left without any opportunity to pursue the substance of its grievance.

Although the MOA blocks arbitration of the grievance with AT&T and Southwestern Bell, it does not block arbitration altogether. Instead, the MOA merely draws an agreed-upon line based on the timing of the violative action alleged to dictate whether the grievance belongs with AT&T, or with the now separate DIRECTV organization that has received the employees in question. (*See* Exhibit A, *MOA re Assumption of Labor Contracts*, ¶ 2). The proper avenue for the Union to have its grievance heard lies with DIRECTV. As has always been the case, it is up to the Union to pursue it.

## IV.   CONCLUSION

Because the Union has failed to present a facially plausible claim that the grievance at issue is arbitrable with AT&T or Southwestern Bell, the lawsuit should be dismissed.

Respectfully submitted,

*/s/ Timothy A. Rybacki*
Timothy A. Rybacki
Texas Bar No. 24056248
trybacki@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney, Suite 1900
Houston, Texas 77010
713.652.4734 (Telephone)
713.951.9212 (Facsimile)

ATTORNEY FOR DEFENDANTS

---

[2] But the Union failed to do so. Its grievance is clear that the totality of the claims revolves around the alleged termination of employees "by operation of the employees being involuntarily transferred to DirecTV" upon the deal's close. (*Complaint*, ¶ 21; *see also Complaint*, ¶ 23, alleging "spinning the employees off from the AT&T affiliates").

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of July 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in this action, including:

David Van Os
Matthew Holder
David Van Os & Associates, P.C.
8626 Tesoro Drive, Suite 510
San Antonio, TX 78217
dvo@vanoslaw.com
matt@vanoslaw.com

/s/ Timothy A. Rybacki
Timothy A. Rybacki